**ROME LLP**
Eugene Rome (SBN 232780)
erome@romellp.com
Bradley O. Cebeci (SBN 198163)
bcebeci@romellp.com
2029 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 282-0690
Facsimile: (310) 282-0691

Attorneys for Plaintiffs
FLEXSENAL INC. and MASTER
FACTOR MARKETING INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLEXSENAL INC. and MASTER FACTOR MARKETING INC.<br><br>Plaintiffs,<br><br>v.<br><br>MOBIUSPAY INC., NAB-CW LLC d/b/a CWA MERCHANT SERVICES, MERRICK BANK CORPORATION, and DOES 1 through 10,<br><br>Defendants. | Case No. 5:24-cv-2582<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>(1) **BREACH OF CONTRACT**<br>(2) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>(3) **CONVERSION**<br>(4) **MONEY HAD AND RECEIVED**<br>(5) **UNFAIR BUSINESS PRACTICES**<br>(6) **CIVIL THEFT**<br><br>**[DEMAND FOR A JURY TRIAL]** |

COMPLAINT

1  Plaintiffs FLEXSENAL INC. and MASTER FACTOR MARKETING INC.
2  (collectively, "**Plaintiffs**"), by and through their attorneys of record, bring this action
3  on behalf of themselves and all others similarly situated against Defendants
4  MOBIUSPAY INC., NAB-CW LLC *doing business as* CWA MERCHANT
5  SERVICES, and MERRICK BANK CORPORATION (collectively, "**Defendants**")
6  and, based on personal knowledge with respect to those allegations that pertain to the
7  named Plaintiffs, and based on information and belief with respect to those allegations
8  that pertain to others similarly situated, allege and complain as follows:

**SUMMARY OF THE ACTION**

10  1.    This is a federal class action that asserts claims for breach of contract,
11  breach of the implied covenant of good faith and fair dealing, conversion, money had
12  and received, unfair business practices and civil theft against Defendants, who offer
13  payment processing services to businesses to enable them to accept debit and credit card
14  payments from their customers. Plaintiffs bring this action on behalf of a Class of
15  businesses (defined below) who have contracted with Defendants for payment
16  processing services by entering Defendants' standard form merchant agreement (the
17  MobiusPay Merchant Application).

18  2.    This case arises out of Defendants' breach of the MobiusPay Merchant
19  Application by deceptively charging the Plaintiffs and other Class members "Early
20  Termination Fees" without proper disclosure, and without any contractual or other legal
21  right to do so.

22  3.    This action seeks damages and restitution from Defendants on behalf of a
23  Class of merchants harmed by Defendants' serial breaches of contract, acts of bad faith,
24  unfair business practices, and theft in connection with Defendants' assessment of "Early
25  Termination Fees" without proper disclosure, and without any contractual or other legal
26  right to assess such a fee. This action further seeks injunctive relief barring Defendants
27  from continuing to engage in these unfair and deceptive business practices.

28

**THE PARTIES**

4.     Plaintiff FLEXSENAL INC. ("**Flexsenal**") is a California corporation with its principal place of business located at 337 North Vineyard Avenue, Ontario, CA 91764.

5.     Plaintiff MASTER FACTOR MARKETING INC. ("**MFM**") is a Nevada corporation with its principal place of business located at 11035 Lavender Hill Drive, Las Vegas, CA 89135.

6.     Defendant MOBIUSPAY INC. ("**MobiusPay**") is a Florida corporation with its principal place of business located at 360 Central Avenue, Suite 800, St. Petersburg, FL 33701.

7.     Defendant NAB-CW LLC (formerly, CARDWORKS ACQUIRING LLC) *doing business as* CWA MERCHANT SERVICES ("**CWA**") is a Delaware limited liability company with its principal place of business located at 250 Stephenson Highway, Troy, MI 48083.  Based upon a review of CWA's parent company North's various filing in Federal Courts across the United States, Plaintiff believes and based thereupon alleges that none of CWA's members are citizens of the State of California.

8.     Defendant MERRICK BANK CORPORATION ("**Merrick**") is a Utah corporation with its principal place of business located at 10705 South Jordan Gateway, Suite 200, South Jordan, UT 84095.

**JURISDICTION AND VENUE**

9.     This Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. § 1332(d). The aggregate amount in controversy exceeds $5,000,000 (Five-Million Dollars), exclusive of interests and costs. The number of members of the proposed Class exceeds 100; and many members of the proposed Class are citizens of different states than the Defendants. Upon information and belief, fewer than two-thirds of the proposed Class members are citizens of California.

10.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

11.    Venue lies within this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391. Defendants market their processing services to businesses throughout the United States, specifically including California-based businesses like Flexsenal, CWA and Merrick are registered to do business in California, MobiusPay maintains virtual offices in California, and the Terms & Conditions published on the MobiusPay website (https://mobiuspay.com/terms-conditions.html) provide for California law and exclusive jurisdiction and venue in the state and federal courts of Los Angeles County, California for any and all actions or proceedings arising in connection with the agreement or any services or business interactions between MobiusPay and users of the MobiusPay website and/or services.  A true and correct copy of the Terms & Conditions is attached as **Exhibit 1** hereto and incorporated herein by this reference as though set forth in full.

**FACTUAL ALLEGATIONS**

A.    **Background on Payment Processing**

12.    In order to accept debit and credit cards ("**payment cards**") as payment over the Internet, a business (commonly referred to as a "**merchant**" in the payment processing industry) must first open a "**merchant account**" for payment processing services with a member bank of Visa Inc. and Mastercard International Incorporated (collectively, the "**Card Brands**").

13.    Such member banks have direct agreements with the Card Brands that enable them to process payments made by holders of payment cards issued by the Card Brands to purchase goods and services from "merchants" that contract with such member banks for payment processing services. This process is called "**acquiring**," and the banks are commonly referred to as "**acquirers**," in the payments industry.

14.    Acquirers, in turn, may contract with third party organizations and sponsor them for registration with the Card Brands to provide processing-related services to merchants in support of the acquirer's merchant program (the "**Program**"). Once registered with the Card Brands under an acquirer's sponsorship, such third party organizations are generally referred to as "**Third Party Agents**" ("**TPAs**") in Visa parlance, and "**Member Service Providers**" ("**MSPs**") in Mastercard parlance.

15.    In providing payment processing services to merchants, each acquiring bank is required to strictly comply—and ensure the strict compliance of its TPA/MSPs and merchants—with a comprehensive set of rules and standards promulgated and periodically updated from time to time by the Card Brands (the "**Card Brand Rules**") as a contractual condition of the bank's membership agreements with the Card Brands. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS Inc.*, 59 S.W.3d 63, 66 (Tenn. 2001) ("Only banks and other similar financial institutions may become members of the Visa and Mastercard associations. These banks enter into membership agreements with Visa and Mastercard; the agreements incorporate the rules and regulations of Visa and Mastercard and allow the member banks to provide credit card processing services.").

16.    Applying these terms here, Merrick is an acquiring bank that sponsors MobiusPay and CWA for registration with the Card Brands as "**Independent Sales Organizations**" ("**ISO**"), which is a particular category of TPA/MSP that is authorized by virtue of its registration with the Card Brands to market payment processing services to merchants (like the Plaintiffs and other Class members) to solicit their participation in Merrick's Program, and perform certain types of merchant services on behalf of Merrick in support of its Program, including application processing, customer service, and monthly statement preparation. The sponsorship of MobiusPay by Merrick is affirmed on the MobiusPay website: "MobiusPay Inc. is a registered ISO/MSP of Merrick Bank, South Jordan, UT." *See* https://mobiuspay.com/.

17.     As the sponsor bank, Merrick must at all times be entirely responsible for, and must manage, direct and control, all aspects of its Program and Program-related services performed by TPA/MSPs like MobiusPay and CWA, and establish and enforce all Program management and operating policies in accordance with the Card Brand Rules. As the sponsor bank, Merrick must also approve all Program materials (*e.g.* merchant applications and agreements) before distribution by an ISO, and maintain prompt and unrestricted physical access to all original, executed Merchant Agreements. Mastercard Rule 7.2.8 (Program Materials); Mastercard Rule 7.6.3 (Access to Documentation).

18.     The Card Brand Rules mandate that a merchant agreement must include a separate or distinct fee disclosure (a "**Fee Disclosure**"), which must clearly and conspicuously detail the methodology by which each merchant fee (a "**Fee**") is calculated. For this purpose, a "**Fee**" means any charge by an acquirer to a merchant related to or arising from the merchant agreement, including but not limited to transaction processing charges; authorization, clearing or settlement charges; the pass-through of any acquirer obligation to a third party; **and, most importantly for the purposes of this lawsuit, any merchant agreement termination charge**. Moreover, the method used to calculate each Fee listed in the Fee Disclosure, including any conditions, terms or contingencies that are or could be applicable to the Fee, must be clearly explained in plain terms. The acquirer must ensure that pricing schemes used by agents are clearly communicated in writing to the merchant and have the merchant's written acceptance. Proper disclosure of such fees is a mandatory condition precedent to an acquiring bank's right to charge such fees to a merchant. *See* Mastercard Rule 5.1.2 (Required Merchant Agreement Terms) for the U.S. Region; *see also* Visa Acquirer Standards, Rule 8.3 (Acquirer Responsibilities when Using Agents).

19.     According to custom and practice in the payments industry, all parties to a merchant agreement must strictly comply with all Card Brand Rules; and the Fee

Disclosure is an integral part of each and every merchant application, which must clearly, conspicuously, and transparently disclose the complete scope of Fees to which a merchant will or may potentially be subject in connection with the resulting merchant agreement.

**B.    The MobiusPay Merchant Application**

20.    MobiusPay holds itself out to the general public via the MobiusPay website as a merchant services provider with the ability to connect prospective merchants with a payment processing solution to suit their needs, and identifies itself as registered ISO of Merrick.

21.    Plaintiffs, and each and every Class member, applied for one or more merchant accounts with CWA and Merrick by completing, signing and submitting a substantially identical form merchant application to MobiusPay (the "**MobiusPay Merchant Application**" hereinafter referred to as the "**MMA**"), which consists of a total of five pages.

22.    MobiusPay presented each such signed and completed MMA to CWA and Merrick.

23.    CWA and Merrick, in turn, entered into the MMA with each of the Plaintiffs and other Class members by issuing a corresponding merchant account to each of them, thereby forming a contract between CWA and Merrick, on the one hand, and each of the Plaintiffs and other Class members, on the other hand.

24.    While the MMA includes a purported acknowledgement by the merchant that the merchant on whose behalf the application is being submitted has "received, read and understood the Merchant Agreement, which is incorporated by reference thereto, and agrees … to be bound by the terms of such Merchant Agreement," neither Plaintiffs nor any of the other Class members was provided with a copy of, or the opportunity to review, any such "Merchant Agreement" or "Terms and Conditions" document before signing the MMA, opening a merchant account, and submitting transactions to

1   Defendants for processing through the merchant account. Rather, the MMA represents
2   the totality of the contractual terms and conditions agreed upon by and between each of
3   the Plaintiffs and other Class members, on the one hand, and CWA and Merrick, on the
4   other hand.

5      25.    A true and correct copy of the MMA signed by Flexsenal's principal, Raul
6   Uribe, on or about April 7, 2023 and constituting the tripartite contract between
7   Flexsenal, on the one hand, and CWA and Merrick, on the other hand, is attached hereto
8   as **Exhibit 2** and incorporated herein by this reference as though set forth in full.

9      26.    A true and correct copy of the MMA signed by MFM's principal, Henry
10   Rodriguez Amaya, on or about April 7, 2023 and constituting the tripartite contract
11   between MFM, on the one hand, and CWA and Merrick, on the other hand, is attached
12   hereto as **Exhibit 3** and incorporated herein by this reference as though set forth in full.

13     27.    The MMA conspicuously displays: the MobiusPay name and logo in the
14   upper lefthand corner, and the Merrick name and logo in the upper righthand corner, of
15   the first page. And, the bottom of the first page of the MMA includes a "Bank
16   Disclosure" section that identifies Merrick as the "Member Bank" responsible for (i)
17   extending acceptance of Visa products to the merchant, (ii) educating the merchant on
18   pertinent Visa operating regulations, (iii) holding, administering and controlling all
19   reserve funds derived from settlement, (iv) holding, administering and controlling all
20   settlement funds for the merchant, and (v) being a principal (signer) to the Merchant
21   Agreement. The Bank Disclosure also includes Merrick's contact information and
22   advises that Merrick "is the ultimate authority should the Merchant have any problems."

23     28.    By way of explanation, the "settlement process" refers to the transfer of
24   funds from the cardholder's account to the merchant's account, and "settlement funds"
25   are the proceeds of a merchant's sales transactions, which are credited to the merchant
26   account *after* deduction of the applicable Discount Rate, transaction fees and reserve
27   percentage, and then deposited by the acquiring bank into the merchant's demand

28

deposit account. "Reserve funds" are deducted by the acquiring bank from a merchant's "settlement funds" (typically in an agreed upon percentage of 5 to 10%) and set aside in a "reserve account" to protect both the merchant and the acquiring bank against the risk of loss in connection with the merchant's processing activity, such as for "chargebacks" (where a cardholder or the card issuing bank disputes a charge) or Card Brand fines (amounts assessed by Visa or Mastercard against the acquiring bank based on a merchant's alleged violation of the Card Brand Rules). Conceptually, a "reserve account" is similar to a security deposit for an apartment rental or collateral for a loan.

29.    The Card Brand Rules prohibit an ISO from having access to any account for funds due to a merchant (*e.g.*, settlement funds) or withheld from a merchant for chargebacks (*e.g.*, reserves); and prohibit an acquirer from assigning or transferring to an ISO an obligation to pay or reimburse a merchant if the obligation arises from the merchant's processing activity. *See*, *e.g.*, Mastercard Rule 7.3 (Access to Merchant Account). Discount rates (or similar charges called by other terms) due to an acquirer from a merchant must be collected directly by the acquirer and not by the ISO. *See*, *e.g.*, Mastercard Rule 7.6.2 (Collection of Funds from a Merchant). Thus, the MMA makes clear that Merrick is solely responsible for holding, administering and controlling all settlement and reserve funds.

30.    The mandatory Fee Disclosure for the contract between each of the Plaintiffs and other Class members, on the one hand, and CWA and Merrick, on the other hand, is embodied on Page 2 of the MMA, and begins with a section titled, "Schedule A: Visa/Mastercard/Discover/American Express Discount Rates and Fees," which discloses the applicable Discount Rates and Fees. And, immediately below this section is another section titled, "Other Fees," which discloses the applicable "Per Item Fees," "Miscellaneous Fees," and "Startup Fees," all as follows:

**SCHEDULE A: VISA/MASTERCARD/DISCOVER/AMERICAN EXPRESS DISCOUNT RATES & FEES**

You have the option of accepting MasterCard credit cards, Visa credit cards, Discover credit cards, MasterCard signature debit cards (Master Money Cards) Visa signature debit cards (Regulated Check Cards), Discover debit cards and ALL American Express Cards. You may elect to accept any or all of these card types for payment. If you do not specifically indicate otherwise, your application will be processed to accept ALL MasterCard, Visa, Discover and American Express card types.

| BILLING PLATFORM | | | | | | Opt Blue ☐ Yes ☐ No | Next Day Funding ☐ ☑No | |
|---|---|---|---|---|---|---|---|---|
| Tiered: | Regulated Check Card | % | Qualified | 3.29 | % | Mid Qualified 3.29 % | Non Qualified | 5.09 % |
| Interchange Plus: | | BPS | | | | | Non Qualified | BPS |
| Bulk: | | | Qualified | | % | | Non Qualified | % |
| Bundled: | | | Qualified | | % | | Non Qualified | % |
| American Express: | | BPS | Qualified | | % | Transaction Fee $ | Non Qualified | BPS /% |

**OTHER FEES**

| PIN DEBIT DISCOUNT RATE | | PER ITEM FEES | | MISC FEES | | | | STARTUP FEES | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PIN/Debit/EBT Discount | N/A % | Visa/MC/Disc Authorization Fee | $ 0.20 | Chargeback Fee/ Return Item Support Fee | $ 20.00 | Next Day Funding $ | N/A | Annual Fee* | $N/A | PIN/Debit Injection/Setup Fee | $N/A |
| PIN/Debit Authorization Fee | $ N/A | Visa/MC/Disc Transaction Fee | $ 0.20 | Retrieval Fee | $12.50 | ACH Reject Fee | $25.00 | Application Fee* | $N/A | Terminal Reprogramming Fee | $ N/A |
| PIN/Debit Transaction Fee | $ N/A | American Express Authorization Fee | $ 0.20 | Monthly Minimum Fee | $25.00 | DDA Change Fee | $N/A | COMPLIANCE FEES | | | |
| EBT Authorization Fee | $ N/A | AVS Fee | $0.05 | Monthly Fee | $10.00 | Basell/II/KB Fee | Pass Through | PCI Compliance Fee (bi-annual) | $ 89.99 | Regulatory Fee | $4.95 |
| EBT Transaction Fee | $ N/A | ACH Fee | $N/A | Online Reporting Fee | $N/A | Card Brand Fees | Pass Through | Non-Receipt of PCI Data Validation Fee | $ 19.99 | | |
| Voice/IVR Authorization Fee | $.95 | Batch Header Fee | $ N/A | Sponsorship Fee | | Dispute Resolution Fee | Pass Through | * Effective after 90 days | | | |

31.    The bottom portion of Page 2 of the MMA consists of a "Terminal Setup Info" section, which completes the Fee Disclosure by providing Fee information for Gateway Services.

32.    Critically, the Fee Disclosure does not disclose the existence of any merchant agreement termination charge (commonly referred to in the payments industry as an "**Early Termination Fee**" or "**ETF**") or detail the methodology by which such an ETF would be calculated. Based on this lack of disclosure, the Card Brand Rules incorporated by reference into Merrick's membership agreements with Visa and Mastercard, Merrick's ISO agreements with MobiusPay and CWA, and the MMA itself, prohibit Defendants from charging the Plaintiffs or other Class members an ETF.

33.    Page 4 of the MMA includes a "Merchant Application and Agreement Acceptance" section, which provides in relevant part as follows:

By executing this Merchant Application on behalf of the merchant described above ("Merchant"), the undersigned individual(s) represent(s), warrant(s), and acknowledge(s) that: (i) All information contained in this Merchant Application ("Application") is true, correct and complete as of the date of this Application; (ii) If the Merchant is a corporation, limited liability company, or partnership, the individual(s) executing this Application have the requisite legal power and authority to complete and submit this Application on behalf of the Merchant and to make and provide the acknowledgements, authorizations and agreements set forth herein on behalf of the Merchant, and individually; (iii) The information contained in this Application is provided for the purpose of obtaining, or maintaining, a merchant account for the Merchant with Merrick Bank ("Bank") and Bank will rely on the information provided herein in its approval process and in setting the applicable Discount Rate, Approved Average Ticket, and Approved Monthly Bankcard Volume; (iv) Bank is authorized to investigate, either through its own agents or through credit bureaus/agencies, the credit of the Merchant and each person listed on this Application; (v) Bank will determine all rates, fees and charges and notify Merchant of the approved fees and by Merchant's submission and acceptance of Merchant's first settled transaction. Merchant agrees to pay such approved fees; (vi) The Merchant Agreement will not take effect until Merchant has been approved by Bank and a merchant number has been issued to Merchant; and (vii) The undersigned has received, read and understood the Merchant Agreement, which is incorporated herein by reference thereto, and agrees on behalf of the Merchant to be bound by such Merchant Agreement. The Merchant on whose behalf this Application is being submitted acknowledges that if this Application is being submitted to Merrick Bank, NAB-CW LLC d/b/a CWA Merchant Services ("CWA")[1] may also be a party to this Merchant Agreement. In such case, Merchant acknowledges that CWA will rely on the representations and warranties set forth in this Application for Merchant Agreement and unless otherwise specified or prohibited by Association or

---

[1] Note that the version of the MMA signed by Plaintiffs in April 2023 erroneously identifies Merrick Bank and ***Cardworks Acquiring LLC*** as the contractual counterparties. However, according to the NorthAB LLC website (www.north.com/coMMAny/about/who-we-are), following its acquisition by North American Bancard LLC in 2022, Cardworks Acquiring LLC became NAB-CW LLC d/b/a CWA Merchant Services. Thus, Plaintiffs are informed and believe that, on or about June 23, 2023, Defendants issued an updated version of the MMA (bearing "v 6.23.23" in the footer) correcting this error (as reproduced above), but which is otherwise substantively identical to the earlier version of the MMA signed by Plaintiffs.

applicable law, CWA will have all the rights of Bank under this Application and Agreement.

34.     Notwithstanding the above-quoted language from the "Merchant Application and Agreement Acceptance" section of the MMA, and as alleged above, Defendants did not provide either of the Plaintiffs or any of the Class members with a copy of, link to, or the opportunity to review any "Merchant Agreement," "Terms and Conditions," or similar document to supplement the terms and conditions of the payment processing services to be provided by CWA and Merrick pursuant to the MMA.

35.     While Plaintiffs and other Class members did click on the Terms & Conditions link in the footer of the MobiusPay website before completing, signing and submitting the MMA to MobiusPay, the MobiusPay "Terms & Conditions" simply govern the use of the MobiusPay Website and Gateway, and do not speak to or govern any contractual relationship created between the Plaintiffs and other Class members, on the one hand, and CWA and Merrick, on the other hand. Indeed, the MobiusPay Terms & Conditions do not even mention CWA or Merrick. Thus, the MobiusPay Terms & Conditions apply only with respect to the business relationship between the Plaintiffs and other Class members, on the one hand, and MobiusPay, on the other hand.

36.     Thus, the MMA embodies the entirety of the contract between each of the Plaintiffs and other Class members, on the one hand, and CWA and Merrick, on the other hand; and the contractual relationship between each of the Plaintiffs and other Class members, on the one hand, and CWA and Merrick, on the other hand, is governed exclusively by the terms of the MMA.

**C.     The Payment Processing Relationship**

37.     Each of the Plaintiffs and other Class members agreed to the terms of the MMA by completing, signing and submitting it to MobiusPay for presentation to CWA and Merrick, and CWA and Merrick accepted the terms the MMA and entered into

a binding contract with each of the Plaintiffs and other Class members by approving such application and issuing a merchant account to each of them.

38.    Throughout the active term of each MMA, each of the Plaintiffs and other Class members submitted sales transactions through its merchant account for processing by CWA and Merrick.

39.    Throughout the active term of each MMA, CWA and Merrick set aside a percentage (typically, ten percent) of the settlement funds from each of the Plaintiffs' and other Class members' daily batch activity to hold and maintain as "reserves" to secure CWA and Merrick against the risk of loss in connection with each merchant's processing activity.

40.    Throughout the active term of each MMA, CWA and Merrick caused monthly billing statements (commonly referred to as "**merchant statements**") to be sent or made available to each of the Plaintiffs and other Class members summarizing each merchant's processing activity for the corresponding month, including the total count and volume of Sales, Credits, and Debit transactions; Reserve Percentage and Reserve Held; Discount Fees and Other Fees, including Merchant Authorizations, and Miscellaneous Fees such as Address Verification Fees and Chargeback Fees; and Batch Summary, summarizing the transaction count, volume and reserve withholding on a daily basis. For those Class members on CWA's proprietary EPX platform, CWA provided this information directly in the form of monthly "**Merchant Statements**"; and for the Plaintiffs and other Class members, MobiusPay provided this information on behalf of CWA and Merrick in the form of "**Monthly Billing Statements**."

41.    After each of the Plaintiffs and other Class members had processed with CWA and Merrick for a period of time (ranging from months to years), CWA and Merrick terminated the MMA and, after all "trailing" (*i.e.* post-termination) chargeback activity on the corresponding merchant account had ended and all associated risk of loss had already passed, assessed a three-to-five figure ETF against the merchant, and

collected the ETF by deducting it from the reserve held by Merrick in connection with each Class member's merchant account. In many cases, CWA and Merrick's application of the ETF against the reserve funds consumed the entirety of the merchant's reserves, and left the merchant with a negative balance, which CWA and Merrick generally made no effort to collect.

42.    CWA has admitted in writing that "no letter was sent to any merchants but the ETF fee shows in the statement if they are on EPX. Merchants were not notified because the fees are within the contract's terms." For those merchants on EPX that received a "Merchant Statement" reflecting CWA and Merrick's assessment of the ETF, it was often labeled as follows: "(Manual) ETF – VIRP Closure". However, CWA has refused to provide the calculation as to how the ETFs were determined. Moreover, contrary to CWA's assertion that the ETFs are "within the contract's terms," there is no mention of the ETF in the MMA, which is the only contract between each of the Plaintiffs and other Class members, on the one hand, and CWA and Merrick, on the other hand.

### D.    Plaintiff's Payment Processing Relationship With Defendants

43.    On or about April 7, 2023, Plaintiffs Flexsenal and MFM each signed and submitted its respective MMA to MobiusPay, which, in turn, submitted them to CWA and Merrick.

44.    Shortly thereafter, CWA and Merrick approved both applications and issued a merchant account to (a) Flexsenal with a merchant account identification (commonly referred to as a "**MID**" in the payments industry) number ending in *3939 (the "**Flexsenal MID**"); and (b) MFM with a MID number ending *3948 (the "**MFM MID**")**.

45.    On behalf of CWA and Merrick, MobiusPay issued a "Monthly Billing Statement" to each of the Plaintiffs each month throughout the active term of each Plaintiff's processing relationship with CWA and Merrick.

46.     Each Monthly Billing Statement summarized each merchant's processing activity for the corresponding month, including the total count and volume of Sales, Credits, and Debit transactions; Reserve Percentage and Reserve Held; Discount Fees and Other Fees, including Merchant Authorizations, and Miscellaneous Fees such as Address Verification Fees and Chargeback Fees; and Batch Summary, summarizing the transaction count, volume and reserve withholding on a daily basis.

47.     Based on Plaintiffs' respective Monthly Billing Statements for April 2023, on or about April 27, 2023, (a) Flexsenal submitted its first sales transaction through the Flexsenal MID, and (b) MFM submitted its first sales transaction through the MFM MID.

48.     Based on Plaintiffs' respective Monthly Billing Statements for February 2024, (a) Flexsenal submitted its last sales transaction through the Flexsenal MID on or about February 14, 2024, and (b) MFM submitted its last sales transaction through the MFM MID on or about February 12, 2024.

49.     Based on the foregoing, Plaintiffs are informed and believe that CWA and Merrick terminated the (a) Flexsenal MID on or about February 15, 2024, and (b) MFM MID on or about February 13, 2024.

50.     MobiusPay issued a Monthly Billing Statement to each of the Plaintiffs for March 2024, which reflected a total Reserve Held balance of (a) $6,887.46 for the Flexsenal MID, and (b) $7,152.69 for the MFM MID.

51.     Neither of the Plaintiffs received any additional Monthly Billing Statements for their respective MIDs after the Monthly Billing Statements for March 2024.

52.     Upon subsequent inquiry to MobiusPay, however, Plaintiffs learned that CWA and Merrick had assessed an ETF of (a) $7,881.79 against the Flexsenal MID, and (b) $8,237.27 against the MFM MID. CWA and Merrick collected these ETFs from

1   the reserve balance being held for each of these MIDs.

2       53.    Thus, in the case of Flexsenal and MFM, the ETF assessed by CWA and

3   Merrick zeroed out the total Reserve Held in connection with both the Flexsenal and

4   MFM MIDs, leaving each of them with a negative balance, which CWA and Merrick

5   made no effort to collect.

6       54.    Neither of the Plaintiffs received any notice letter of the ETFs being

7   assessed against the MIDs. And, as a matter of pattern and practice, Defendants did not

8   provide any notice letter to the other Class members that an ETF was being assessed

9   against their MIDs and collected from the corresponding reserve balance for the MIDs.

10      55.    Neither of the Plaintiffs was on EPX, and neither of the Plaintiffs received

11   a copy of any Monthly Billing Statement referencing the ETF and its application against

12   the reserve. The same is true for all other Class members that were not on EPX and who

13   received their Monthly Billing Statements from MobiusPay as opposed to a monthly

14   "Merchant Statement" from CWA (i.e. they did not receive a copy of any Monthly

15   Billing Statement referencing the ETF and its application against the reserve).

16                            **CLASS ALLEGATIONS**

17   **A.**    **Definition of the Class**

18      56.    Plaintiffs bring this class action on behalf of themselves and on behalf of

19   the following proposed Class, initially defined as follows:

20
       All businesses or entities who have contracted with CWA and Merrick
21       in the United States by executing the MMA and who were subsequently
       charged an ETF on or after January 1, 2021 (the "**Class**").
22

23      57.    Plaintiffs reserve the right to redefine the class definition prior to class

24   certification and after having the opportunity to conduct discovery.

25   **B.**    **The Class Satisfies the Requirements of Rule 23**

26      58.    This action is properly brought as a class action under Rule 23 for the

27   following reasons:

28

a. **Numerosity:** The Class is so numerous and geographically dispersed throughout the United States that the joinder of all Class members is impracticable. While Plaintiffs do not know the exact number and identity of the members of the Class, Plaintiffs are informed and believe that there are more than 100 members in the Class. The precise number of members in the Class may be ascertained through discovery.

b. **Commonality and Predominance:** There are questions of law and fact common to the Class which predominate over any questions that may affect particular members of the Class. Such common questions of law and fact include, but are not limited to:

    i. Whether CWA and Merrick breached the MMA by charging members of the Class an ETF without contractual authorization;

    ii. Whether CWA and Merrick breached the MMA by charging members of the Class an ETF without disclosing the fee in the Schedule of Fees on page 2 of the MMA;

    iii. Whether the MMA fails to comply with Visa and/or Mastercard standards for prominent fee disclosures based on its failure to disclose the ETF in the Schedule of Fees;

    iv. Whether CWA and Merrick breached the covenant of good faith and fair dealing by their conduct as alleged herein;

    v. Whether CWA and Merrick converted the merchant reserves by their conduct alleged herein;

    vi. Whether CWA and Merrick were unjustly enriched by

their conduct as alleged herein; and

    vii. Whether Defendants engaged in unfair business practices in violation of Business and Professions Code § 17200 *et seq.* by their conduct as alleged herein.

    viii. Whether CWA engaged in civil theft in violation of California Penal Code § 496(a) by its conduct as alleged herein.

c. **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs and the members of the Class have been injured by the same wrongful practices of Defendants. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of each of the other members of the Class and are based on the same legal theories.

d. **Adequacy of Representation:** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interest antagonistic to the interests of the other members of the Class, and Plaintiffs have retained attorneys experienced in payments law, class actions, and complex business litigation.

e. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

    i. This action will promote an orderly and expeditious administration and adjudication of the claims of the Class; economies of time, effort and resources will be fostered; and uniformity of decisions will be ensured;

    ii. Without a class action, members of the Class will continue to suffer damages, and Defendants' violations

17

COMPLAINT

of law will proceed without remedy while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct;

iii. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action; and

iv. Finally, as the damages suffered by some of the individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.

59. Defendants have, or have access to, address information for each of the members of the Class, which may be used for the purpose of providing notice of the pendency of this class action.

60. Plaintiffs seek damages and equitable relief on behalf of the Class on grounds generally applicable to the entire Class.

61. In the alternative, common questions of fact and law are appropriate for issue certification on behalf of the proposed Class.

62. **Application of California Law:** California law should be applied to the Class because, while the MMA is silent with respect to choice of law, CWA and Merrick are registered to do business in California with the California Secretary of State, MobiusPay maintains virtual offices in California, its representatives, including its Founder and CEO, Mia Hyun, is a citizen of the State of California and transacts business from the State of California, Defendants actively market Merrick's Program to California businesses, the MobiusPay Terms & Conditions expressly state that all actions or proceedings arising out of any services or business interactions between MobiusPay, on the one hand, and any user of the MobiusPay services, shall be tried

and/or litigated exclusively in the state and federal courts located in Los Angeles County, California, and governed by California law, and each and every one of the Plaintiffs and other Class members (including Flexsenal and other California-based businesses) used the MobiusPay services to obtain and submit the MMA to MobiusPay to apply for the subject payment processing services with CWA and Merrick, and many of the Class members affirmatively agreed to the MobiusPay Terms & Conditions in order to contact MobiusPay in the first instance.

**FIRST CLAIM FOR RELIEF**

**<u>Breach Of Contract</u>**

**(By Plaintiffs Against CWA And Merrick)**

63.    Plaintiffs re-allege and hereby incorporate herein by this reference as though set forth in full each of the allegations contained in the preceding paragraphs of this Complaint.

64.    This cause of action is brought by Plaintiffs on behalf of all Class members.

65.    The MMA is a valid and enforceable written contract between each of the Plaintiffs and other Class members, on the one hand, and CWA and Merrick, on the other hand.

66.    Each of the Plaintiffs and other Class members manifested its consent and agreement to the MMA by completing, signing and submitting the form MMA to MobiusPay for presentation to CWA and Merrick to apply for merchant services through Merrick's Program; and CWA and Merrick manifested their consent and agreement to the MMA by approving each of the Plaintiffs and other Class members for participation in Merrick's Program and issuing a corresponding merchant account to each of them.

67.    Each of the Plaintiffs and other Class members fully and faithfully performed all conditions, terms, covenants and agreements owed to CWA and Merrick under the MMA. To the extent that any of the Plaintiffs or other Class members owed

19

COMPLAINT

any other obligation to CWA and Merrick under the MMA, each such Plaintiff's or other Class member's performance of such other condition, term, covenant or agreement has been excused, waived, or rendered impossible by CWA and Merrick.

68.     The MMA does not provide for an ETF, and none of the Plaintiffs or other Class members ever accepted in writing, or otherwise consented to, an ETF being applied against its merchant account and deducted from its reserves.

69.     CWA and Merrick have materially breached the MMA by charging each of the Plaintiffs and other Class members a three-to-five figure ETF without disclosing the existence of the Fee or its method of calculation in the Schedule of Fees, or anywhere else in the MMA.

70.     CWA and Merrick have materially breached the MMA by charging each of the Plaintiffs and other Class members a three-to-five figure ETF without any contractual right to do so.

71.     Merrick has materially breached its duty under the MMA to hold, administer and control all reserve funds derived from settlement of each of the Plaintiffs' and other Class members' sales transactions by allowing CWA to take possession of the Plaintiffs' and other Class members' reserves as a purported ETF even though CWA and Merrick failed to disclose the ETF in the MMA in violation of the Card Brand Rules incorporated by reference into the MMA, and by which Merrick is separately bound pursuant to its membership agreement with the Card Brands, and by which CWA is separately bound pursuant to its ISO agreement with Merrick.

72.     As a direct and proximate result of CWA and Merrick's material breach of the MMA, as described above, each of the Plaintiffs and other Class members has been damaged and will continue to incur additional damages, in an amount to be proven at trial. Such damages are clearly ascertainable both in nature and in origin.

## SECOND CLAIM FOR RELIEF

### Breach Of Implied Covenant Of Good Faith And Fair Dealing

### (By Plaintiffs Against CWA And Merrick)

73.    Plaintiffs re-allege and hereby incorporate herein by this reference as though set forth in full each of the allegations contained in the preceding paragraphs of this Complaint.

74.    This cause of action is brought by Plaintiffs on behalf of all Class members.

75.    The MMA is a valid and enforceable contract between each of the Plaintiffs and other Class members, on the one hand, and CWA and Merrick, on the other hand.

76.    California law implies a covenant of good faith and fair dealing into each and every contract (including the MMA) under which each party covenants to the other party that it will act in good faith so as not to defeat the purpose, or deprive the other party of the benefits, of the contract.

77.    The MMA does not provide for an ETF, and none of the Plaintiffs or other Class members ever accepted in writing or otherwise consented to an ETF being applied against its merchant account and deducted from its reserves.

78.    Instead, the ETF is a made-up, discretionary fee arbitrarily applied by CWA and Merrick in bad faith as a contrived, pretextual vehicle to misappropriate the reserve funds held by Merrick for the benefit of each of the Plaintiffs and other Class members in connection with their respective merchant accounts to CWA and Merrick's own benefit under a colorable contractual right.

79.    As alleged above, CWA has refused to provide the calculation as to how the ETFs were determined. Plaintiffs are informed and believe that the reason for CWA's refusal to provide said calculation is because the so-called calculation is not based on a set formula, but was determined arbitrarily by CWA and Merrick on an

account-by-account basis in bad faith to maximize CWA and Merrick's misappropriation of merchant reserves.

80.  By this conduct, CWA and Merrick have acted unfairly and in bad faith to deprive each of the Plaintiffs and other Class members of the benefit of their bargain with CWA and Merrick, and have thereby breached their duty of good faith and fair dealing to each of the Plaintiffs and other Class members.

81.  As a direct and proximate result of CWA and Merrick's conduct, each of the Plaintiffs and other Class members has been damaged in the amount of the ETF assessed by CWA and Merrick against its respective merchant account and deducted from its reserves. Thus, each of the Plaintiffs and other Class members is entitled to compensation from CWA and Merrick for said damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

### <u>Conversion</u>

### (By Plaintiff Against CWA And Merrick)

82.  Plaintiffs re-allege and hereby incorporate herein by this reference as though set forth in full each of the allegations contained in the preceding paragraphs of this Complaint.

83.  This cause of action is brought by Plaintiffs on behalf of all Class members.

84.  Each of the Plaintiffs and other Class members owns and has a right to immediate access and control of its net sales proceeds held, administered and controlled as "reserves" by Merrick pursuant to the MMA.

85.  Because CWA and Merrick are each contractually bound to comply with Card Brand Rules; and because Card Brand Rules mandate that the acquirer prohibit an ISO from having access to or handling merchant funds, CWA does not have any right to access, handle or possess any portion of either the Plaintiffs' or any of the Class members' "reserves."

86.     The reserves represent the net proceeds of the Plaintiffs' and other Class members' sales transactions and belong to the Plaintiffs and other Class members. They are identifiable, earmarked monies flowing from the processing of the sales transactions submitted by the Plaintiffs and other Class members to CWA and Merrick for processing that are specific in amount, and were entrusted to Merrick for the specific purpose of distributing the net proceeds of each of the Plaintiffs' and other Class members' sales transactions to them, and setting aside a certain percentage of those proceeds as "reserves" for the specific purpose of protecting Plaintiffs, the other Class members, CWA and Merrick against the risk of loss in connection with the respective processing activity of each of the Plaintiffs and other Class members.

87.     Merrick intentionally and substantially interfered with the right of the Plaintiffs and other Class members to possession of their net sales proceeds held by Merrick as "reserves" in the Reserve Account by allowing CWA to take possession of said "reserves" (without any contractual or legal right to access or handle them) under the false premise that the Plaintiffs and other Class members owed CWA and Merrick an ETF for the early termination of the MMA even though the MMA requires Merrick to hold and control the reserves at all times, and even though the ETF is a contrived, pretextual and invented Fee that CWA and Merrick have no right to charge under the MMA and/or the Card Brand Rules. By doing so, Merrick converted the Plaintiffs' and other Class members' money by making a use of such funds in excess of Merrick's authority and in violation of the possessory and beneficial ownership rights of each of the Plaintiffs and other Class members in the net proceeds of their processing activity.

88.     CWA intentionally and substantially interfered with the right of the Plaintiffs and other Class members to possession of their net sales proceeds held by Merrick as "reserves" in the Reserve Account by taking possession of said funds from Merrick without any contractual or legal right to do so, and then converting those funds to its own purposes (namely, for payment of a contrived, pretextual and invented ETF

that CWA and Merrick have no right to charge under the MMA and/or the Card Brand Rules) rather than transferring said funds to the Plaintiffs and other Class members upon demand.

89.   CWA and Merrick have refused the demands of the Plaintiffs and other Class members for the return of their funds.

90.   By these acts, CWA and Merrick converted the Plaintiffs' and other Class members' specific, earmarked funds by making a use of those funds in excess of their rights with respect to the handling of the Plaintiffs' and other Class members' reserves derived from settlement under the MMA to the detriment of the Plaintiffs' and other Class members' possessory and beneficial ownership interests in the net proceeds of their processing activity.

91.   The Plaintiffs and other Class members did not consent to this conduct by CWA and Merrick.

92.   The Plaintiffs and other Class members suffered harm by being deprived of possession of their net sales proceeds held as "reserves" by Merrick in the amount deducted by CWA and Merrick as payment for the contrived, pretextual ETF described above. For example, Flexsenal suffered harm in the amount of $6,887.46, and MFM suffered harm in the amount of $7,152.69, which is the amount of reserves improperly converted by CWA and Merrick toward payment of the contrived, pretextual ETFs assessed against the Flexsenal and MFM MIDs.

93.   Similarly, the amount of funds owned by each of the Class members and converted by CWA and Merrick is, and at all times relevant herein was, a fixed and readily ascertainable sum received by CWA and Merrick from third parties for each Class member's benefit. However, Plaintiffs cannot state the exact amount of the converted funds in the case of the other Class members because that information resides uniquely within the possession of CWA and Merrick, and those Class members that

received a "Merchant Statement" from CWA reflecting the amount of the ETF applied against its reserves.

94.     CWA and Merrick's conduct was a substantial factor in causing such harm to the Plaintiffs and other Class members.

95.     CWA and Merrick's wrongful acts as described herein—including transferring control and possession of each of the Plaintiffs' and other Class members' "reserve" funds to CWA—were intentional, malicious, oppressive and fraudulent, and were committed with reckless disregard of harm to the Plaintiffs and other Class members, in willful and conscious disregard of their rights, such that the Plaintiffs and other Class members are entitled to recovery punitive and exemplary damages against CWA and Merrick in an amount that is sufficient and appropriate to punish CWA and Merrick, and deter them from committing similar acts in the future.

## FOURTH CLAIM FOR RELIEF

### Money Had And Received

### (By Plaintiff Against CWA And Merrick)

96.     Plaintiffs re-allege and hereby incorporate herein by this reference as though set forth in full each of the allegations contained in the preceding paragraphs of this Complaint.

97.     This cause of action is brought by Plaintiffs on behalf of all Class members.

98.     By the actions alleged above, CWA and Merrick have collected money for the benefit of the Plaintiffs and other Class members in the amount of the reserves held by Merrick and wrongfully transferred to CWA as payment for the contrived, pretextual ETF assessed against the merchant account of the Plaintiffs and other Class members. The money withheld as reserves by Merrick and wrongfully transferred to CWA was not used for the benefit of the Plaintiffs and other Class members.

99.     Plaintiffs have demanded that CWA and Merrick reimburse Plaintiffs the amount of money withheld as reserves by Merrick and wrongfully transferred to CWA

1    as payment for the contrived, pretextual ETF assessed against the Flexsenal and MFM

2    MIDs.

3        100.    CWA and Merrick have failed and refused to reimburse the Plaintiffs and

4    other Class members the amount of money withheld as reserves by Merrick and

5    wrongfully transferred to CWA as payment for the contrived, pretextual ETF assessed

6    against their merchant accounts and are now indebted to the Plaintiffs and other Class

7    members for those monies.

8        101.    As a result of CWA and Merrick's actions, the Plaintiffs and other Class

9    members have been deprived of their money and suffered loss as alleged above.

10        102.    To prevent injustice, CWA and Merrick should be required to identify,

11    account for, fully refund, and provide restitution of the unlawfully retained sums to the

12    Plaintiffs and other Class members. CWA and Merrick should be ordered to release all

13    sums obtained on behalf of the Plaintiffs and other Class members, together with

14    interest thereon, and pay the reasonable attorneys' fees and costs incurred by the

15    Plaintiffs and other Class members.

16    **FIFTH CLAIM FOR RELIEF**

17    **<u>Unfair Business Practices</u>**

18    **(By Plaintiff Against Defendants)**

19        103.    Plaintiffs re-allege and hereby incorporate herein by this reference as

20    though set forth in full each of the allegations contained in the preceding paragraphs of

21    this Complaint.

22        104.    This cause of action is brought by Plaintiffs on behalf of all Class members.

23        105.    Defendants are engaged in unfair and deceptive business practices in

24    violation of Business and Professions Code § 17200 *et seq*.

25        106.    Defendants market payment processing services to merchants in California

26    and throughout the United States, and solicit prospective merchants in California and

27    throughout the United States to apply through MobiusPay for payment processing

28

services with CWA and Merrick under Merrick's Program.

107. Defendants, specifically including MobiusPay on behalf of CWA and Merrick, instruct prospective merchants (including each of the Plaintiffs and other Class members) to complete and sign the form MMA in order to apply for a merchant account with CWA and Merrick under Merrick's Program, and represent to such prospective merchants (including each of the Plaintiffs and other Class members) that the Fee Disclosure on page 2 of the MMA is a complete, accurate and comprehensive disclosure of all Fees to which they will or may potentially be subject in connection with the MMA, which becomes a binding contract with CWA and Merrick upon CWA and Merrick's approval of the application and issuance of a merchant account. These allegations are true and accurate with respect to each of the Plaintiffs and other Class members.

108. Custom and practice in the payments industry, along with the Card Brand Rules to which each of the Defendants is subject, dictate that the Fee Disclosure provided to prospective merchants on page 2 of the MMA should be a complete, accurate and comprehensive disclosure of all Fees to which a merchant will or may be subject if the application is approved, and should be presented to the merchant **before** the merchant signs and submits the MMA for consideration. Thus, prospective merchants, in turn, reasonably understand that the Schedule of Fees on page 2 of the MMA constitutes a comprehensive Fee Disclosure setting forth the complete scope of Fees to which they will or may be subject in connection with the MMA. These allegations are true and accurate with respect to each of the Plaintiffs and other Class members.

109. Critically, notwithstanding the fact that the Card Brand Rules require Defendants to clearly, conspicuously and transparently disclose any merchant agreement termination charge and its method of calculation in the Fee Disclosure and obtain each merchant's written acceptance of the Fee as a condition precedent, the Fee Disclosure embodied in the Schedule of Fees on page 2 of the MMA provided to the

Plaintiffs and other Class members does not mention any ETF or other merchant agreement termination charge, even though CWA and Merrick (with MobiusPay's knowledge) routinely and as a standard business practice assess an ETF against merchants that apply for participation in Merrick's Program through MobiusPay and who are subsequently terminated by CWA and Merrick for cause, which CWA and Merrick deduct from the merchant's reserves, without notice to the merchant. These allegations are true and accurate with respect to each of the Plaintiffs and other Class members.

110. Defendants, specifically including MobiusPay, instruct prospective merchants to complete, sign and submit the MMA to MobiusPay for presentation to CPA and Merrick in order to apply for a merchant account under Merrick's Program, which means *inter alia* signing the Merchant Application And Agreement Acceptance section on page 4 of the MMA. Notably, the Merchant Application And Agreement Acceptance section of the MMA requires each prospective merchant to acknowledge its receipt, review and understanding of a separate "Merchant Agreement," which is purportedly incorporated by reference into the MMA, even though Defendants (specifically including MobiusPay) knowingly and intentionally omit to provide the prospective merchant with a copy of, link to or any opportunity to review any so-called "Merchant Agreement" before signing the MMA and beginning processing through the merchant account. These allegations are true and accurate with respect to each of the Plaintiffs and other Class members.

111. When terminated merchants inquire and/or complain about the ETF, however, Defendants (specifically including MobiusPay) advise the merchants that the "Merchant Agreement" they purportedly received, reviewed and accepted as part of the MMA expressly permits CWA and Merrick to assess the ETF against the merchants' reserves as liquidated damages for any termination by cause. Defendants (specifically including MobiusPay) so advise merchants with knowledge that they neither received

nor had the opportunity to review any such "Merchant Agreement," and thus were never advised of or consented to any such ETF in connection with the MMA. These allegations are true and accurate with respect to each of the Plaintiffs and other Class members.

112.  Defendants engage in these business practices pursuant to a preconceived plan to wrongfully and unfairly deprive merchants of the net proceeds of their own sales transactions as part of a broader pattern and practice of stealing merchant funds. These business practices by Defendants are immoral, unethical, oppressive, unscrupulous and substantially injurious to the merchants that do business with Defendants for payment processing services through Merrick's Program with the expectation of collecting the revenue generated by their own sales activity. These allegations are true and accurate with respect to each of the Plaintiffs and other Class members.

113.  These unfair business practices directly injured Plaintiffs by wrongfully depriving Flexsenal of $6,887.46 in its own funds, and MFM of $7,152.69 in its own funds, which is the amount of reserves improperly converted by CWA and Merrick toward payment of the contrived, pretextual ETFs assessed against the Flexsenal and MFM MIDs.

114.  These unfair business practices directly injured each of the other Class members by wrongfully depriving them of the amount of reserves improperly converted by CWA and Merrick toward payment of the contrived, pretextual ETFs assessed against their MIDs.

115.  MobiusPay and CWA's status as registered third party agents of Merrick is a critical component of their ability to lure merchants into a business relationship, and was a critical component of their ability to lure the Plaintiffs and other Class members into such a business relationship in this case. But for MobiusPay and CWA's status as registered third party agents of Merrick, neither Plaintiffs nor any other Class member would do business with MobiusPay and CWA, and Defendants would not continue to

collect substantial profits from Plaintiffs and other Class members by virtue of these unlawful and unfair business practices.

116. Merrick has knowingly participated in, facilitated, enabled, aided and abetted MobiusPay and CWA's unfair business practices by continuing to: sponsor MobiusPay and CWA with the Card Brands as its registered third party agents, accept the merchants boarded by virtue of MobiusPay and CWA's unfair business practices for payment processing services through Merrick's Program, collect the substantial revenues and profits resulting from those merchants, and share them with MobiusPay and CWA, despite its knowledge that they are engaged in the unfair business practice of defrauding their merchants out of their net sales proceeds by assessing an undisclosed, contrived, and pretextual ETF against their accounts without any contractual or other legal right to do so.

117. Merrick's conduct in knowingly profiting from MobiusPay and CWA's unfair business practices with respect to its merchants is also an unfair business practice in and of itself. Again, Merrick derives substantial revenue by providing processing services to MobiusPay and CWA merchants, and continues to pay MobiusPay and CWA their full share of residuals on each and every transaction processed by those merchants, notwithstanding Merrick's knowledge that Defendants routinely defraud those same merchants out of their net sales proceeds by assessing an undisclosed, contrived, and pretextual ETF against their accounts as part of an established pattern and practice. Thus, this conduct on the part of Merrick is immoral, unethical, oppressive, unscrupulous and substantially injurious to MobiusPay and CWA merchants that participate in Merrick's Program.

118. Because Defendants have misappropriated Plaintiffs' and other Class members' own funds by this scheme, because Merrick's own unfair business practices as described above have enabled MobiusPay and CWA to do so, because Plaintiffs and other Class members have a beneficial ownership and possessory interest in the

misappropriated funds, and because the Plaintiffs and other Class members have suffered injury in fact and lost money and property as a result of Defendants' unfair acts, the Plaintiffs and other Class members are entitled to an injunction awarding restitution pursuant to California Business and Professions Code section 17203 to restore those monies rightfully belonging to Plaintiffs and other Class members that Defendants acquired through these unfair practices.

119.   Plaintiffs also bring this cause of action in the public interest as a private attorney general for an injunction prohibiting Defendants from engaging in these same unfair business practices in regard to other merchants besides the Plaintiffs and other Class members. Thus, the Plaintiffs and other Class members are entitled to an award of attorneys' fees on this cause of action.

**SIXTH CLAIM FOR RELIEF**

**<u>Civil Theft</u>**

**(By Plaintiffs Against CWA)**

120.   Plaintiffs re-allege and hereby incorporate herein by this reference as though set forth in full each of the allegations contained in the preceding paragraphs of this Complaint.

121.   This cause of action is brought by Plaintiffs on behalf of all Class members.

122.   California Penal Code § 496(a) provides that "every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170." Sub-section (c) of Penal Code § 496 instructs that "any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff,

1  costs of suit, and reasonable attorney's fees."

2      123.   As alleged above, CWA failed to disclose and intentionally concealed from

3  the Plaintiffs and other Class members that it had taken possession of the Plaintiffs' and

4  other Class members' funds being held as reserves from Merrick under the false premise

5  that CWA was entitled to payment from the Plaintiffs and other Class members of an

6  undisclosed, contrived and pretextual ETF, and have refused to refund the ETF and

7  return the funds to the Plaintiffs and other Class members. Thus, CWA has received,

8  concealed, and/or withheld these funds from the Plaintiffs and other Class members

9  knowing that said funds are stolen property.

10     124.   As a direct and proximate result of CWA's theft, the Plaintiffs and other

11 Class members have suffered actual damages in the amount of the converted reserves

12 misappropriated by CWA as a contrived and pretextual ETF, and are therefore entitled

13 to treble damages, plus their reasonable attorneys' fees.

14                              **PRAYER FOR RELIEF**

15     **WHEREFORE**, Plaintiffs, on behalf of themselves and each of the members of

16 the Class, respectfully requests that the Court:

17     1.   Certify this action as a class action, proper and maintainable pursuant

18 to Fed. R. Civ. P. 23, appoint Plaintiffs as representatives of the Class, and designate

19 Plaintiffs' counsel as counsel for the Class;

20     2.   Award Plaintiffs and the Class compensatory damages for all damages

21 sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial;

22     3.   Award Plaintiffs and the Class exemplary and punitive damages on the

23 conversion action according to proof and in an amount sufficient to punish and set an

24 example of Defendants, and each of them;

25     4.   Impose a constructive trust over funds belonging to Plaintiffs and the

26 Class but retained by Defendants and each of them;

27

28

5.     Grant injunctive relief prohibiting Defendants from continuing to engage in the wrongful acts and practices alleged herein;

6.     Award Plaintiffs and the Class treble damages on the civil theft cause of action;

7.     Award Plaintiff and the Class pre- and post-judgment interest at the maximum legal rate;

8.     Grant all such equitable relief as it deems proper and just, including but not limited to disgorgement and restitution; and

9.     Grant all other such relief as it deems just and proper.

Dated:  December 4, 2024                    **ROME LLP**

By:/*s/ Eugene Rome*

EUGENE ROME
Attorneys for Plaintiffs
FLEXSENAL INC. and MASTER
FACTOR MARKETING INC.

1

## **DEMAND FOR A JURY TRIAL**

2

Plaintiffs hereby request a trial by jury on all issues triable by a jury.

3

4

Dated:  December 4, 2024                    **ROME LLP**

5

6

7                                          By: /s/ Eugene Rome

8                                               EUGENE ROME

9                                          Attorneys for Plaintiffs
                                           FLEXSENAL INC. and MASTER
10                                         FACTOR MARKETING INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT